IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RONALD A. TRIPOLI and JENNIFER S. TRIPOLI, <br><br> Plaintiffs, <br> v. <br><br> BRANCH BANKING & TRUST CORP.; GOVERNMENT NATIONAL MORTGAGE ASSOCIATION; and ROBERT J. HOPP & ASSOCIATES, LLC, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO DISMISS** <br><br> Case No. 2:12-CV-125-DN <br><br> District Judge David Nuffer |

Defendant Government National Mortgage Association (GNMA) filed a motion to

dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6).[1]  Plaintiffs concede that GNMA "should be

dismissed from this case with prejudice."[2]  Accordingly, Defendant GNMA's motion is

GRANTED.  Defendants Branch Banking & Trust Corp (BB&T) and Robert J. Hopp &

Associates, LLC, (Hopp & Associates) filed a motion to dismiss pursuant to Rule 12(b)(6).[3]  For

the reasons set forth below, the motion is GRANTED

### Introduction

On October 26, 2009, Plaintiffs Ronald & Jennifer Tripoli borrowed $170,081.00 from

First Colony Mortgage Corporation (Colony) for the refinance of the property located in Payson,

---

[1] Motion to Dismiss, docket no. 15, filed March 16, 2012.

[2] Petitioner's [sic] Response to All of Defendant's Pleadings (Response) at 5 ¶ 10, docket no. 27, filed April 30, 2012.

[3] Defendants Branch Banking & Trust Corp.; Robert J. Hopp & Assoc., LLC Motion to Dismiss, docket no. 8, filed February 28, 2012;

Utah (Subject Property).  The loan was evidenced by a Promissory Note (Note) [4] and secured by

Deed of Trust (Trust Deed). [5]  Pursuant to the Trust Deed, Utah First Title was named trustee and

Mortgage Electronic Registration Systems, Inc. (MERS) was named as the beneficiary as

nominee for Colony. [6]  On December 1, 2009 Colony transferred its servicing rights to Branch

Banking and Trust Company. [7]  In May 2011, the Tripolis defaulted on their loan and BB&T

hired the law firm of Robert J. Hopp & Associates, LLC to facilitate the foreclosure process.

On January 11, 2012, the Tripolis, acting pro se, filed a document titled Complaint to

Quiet Title to Real Property (Complaint) [8] in Utah's Fourth District Court.  The Tripolis'

Complaint named BB&T, GNMA, and Hopp & Associates as defendants.  GNMA removed the

action from state court because the complaint raised federal questions involving a federal party.

The Tripolis' motion to remand [9] was subsequently denied. [10]  Defendants BB&T and Hopp &

Associates now move to dismiss.

### Standard of Review – Motion to Dismiss

A complaint may be dismissed for failure to state a claim under Federal Rules of Civil

Procedure Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts alleged under a

cognizable legal theory. [11]   The Tenth Circuit recently stated that to withstand a motion to

---

[4] Note, attached as Exhibit 1 to Memorandum in Support of Motion to Dismiss (Supporting Memorandum), docket no. 9, filed February 28, 2012.

[5] Deed of Trust, attached as Exhibit 2 to Supporting Memorandum.

[6] *Id*.

[7] Notice of Assignment, Sale or Transfer of Servicing Rights, attached as Exhibit 3 to Supporting Memorandum.

[8] Complaint to Quiet Title to Real Property (Complaint), attached as Exhibit A to Memorandum in Opposition to Motion to Deny Removal or in the Alternative Motion to Move This Case to This Court (Memorandum Opposing Remand), docket no. 14-1, filed March 12, 2012.

[9] Motion to Deny Removal or in the Alternative, Motion to Move Case to This Court (Motion to Remand), docket no. 6, filed February 23, 2012.

[10] Memorandum Decision and Order Denying Motion to Remand, docket no. 29, filed May 1, 2012.

[11] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012);

dismiss under *Bell Atlantic Corporation v. Twombly*[12] and *Ashcroft v. Iqbal*,[13] "a complaint must have enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face."[14] And while "a court must accept as true all of the allegations contained in a complaint" this rule is "inapplicable to legal conclusions."[15] "[A] plaintiff must offer specific factual allegations to support each claim."[16] And only "a plausible claim for relief survives a motion to dismiss."[17] "[A] plaintiff must offer sufficient factual allegations to raise a right to relief above the speculative level."[18] "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[19] "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."[20]

A pro se litigant's pleadings are "construed liberally"[21] and held to a "less stringent standard than formal pleadings drafted by lawyers."[22] But it is not the "proper function of the district court to assume the role of advocate for the pro se litigant."[23] The court's broad reading of pro se complaints does not relieve the plaintiff of "the burden of alleging sufficient facts on

---

[12] 550 U.S. 544 (2007).

[13] 556 U.S. 662 (2009).

[14] *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citations and quotations omitted).

[15] *Id*. (citations and quotations omitted).

[16] *Id*. (citations and quotations omitted).

[17] *Id*. (citations and quotations omitted).

[18] *Id*. (citations and quotations omitted).

[19] *Iqbal*, 556 U.S. at 679.

[20] *Kansas Penn*, 656 F.3d at 1214.

[21] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[22] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[23] *Hall,* 935 F.2d at 1110.

which a recognized legal claim could be based."[24]  "[C]onclusory allegations without supporting

factual averments are insufficient to state a claim on which relief can be based."[25]

### Claims in Complaint

The Tripolis' Complaint and Response to Defendants' Motion to Dismiss are vague and

nearly unintelligible.  The Tripolis' Response contains 125 paragraphs with assertions,

statements of facts, and requests for relief randomly mixed together.  The claims are rarely

backed up by relevant law.  When legal authority is cited, it is either misunderstood by the

Tripolis or irrelevant to the claim it purports to support.  Despite these shortcomings, the court

will address the claims to the extent that they are discernible.

The Tripolis' assertions fall into two basic categories.  First, the Tripolis seek to quiet

title in the Subject Property and second, they allege misconduct by BB&T, Hopp & Associates,

and MERS.

The Tripolis advance the following theories to support their claim to quiet title:

- The Note and Trust Deed were improperly separated (Note splitting theory);
- The Tripolis have quiet title unless BB&T can produce the Note;
- The Tripolis' obligation to repay the loan was discharged; and
- The Note is actually an investment contract.

The Tripolis allege the following misconduct:

- BB&T and Hopp & Associates failed to respond to a Real Estate Settlement Procedures Act (RESPA) requests;
- Hopp & Associates breached its fiduciary duty;
- Hopp & Associates wrongfully acted as a third party debt collector;
- BB&T wrongfully attempted to collect a contested debt; and
- MERS committed various acts of fraud and generally mishandled the loan.

---

[24] *Id*.

[25] *Id.* (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

**Quiet Title Claim**

The Tripolis' various theories purport to give them title to the mortgaged property without fulfilling their obligation to repay the loan.  However, "[t]o succeed in an action to quiet title to real estate, a plaintiff must prevail on the strength of his own claim to title and not on the weakness of a defendant's title or even its total lack of title."[26]

In order for the Tripolis' quiet title claim to be successful, they must show that their claim to title is superior to all others.  Demonstrating that another's claim is invalid or that the opposing party has committed some misconduct will not conclude a quiet title claim.  Each of the Tripolis' theories are discussed in detail below, but they all fail because they allege a perceived weakness in the opposing party's claim rather than asserting a legal claim to the property.

**1. The Note and Trust Deed were Separated ("Impermissible Separation" Theory)**

The Tripolis assert that the Note and the Trust Deed have "traveled separate paths," and therefore the Note is no longer valid.[27]  This assertion stems from the Tripolis' misunderstanding of an 1872 Supreme Court decision that stated:  "The note and mortgage are inseparable; the former as essential, the latter as an incident.  An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."[28]  The Tripolis assert that this language establishes a loop-hole whereby a note becomes void if it is separated from the mortgage or trust deed it by which it was secured.  Based on this flawed conclusion, the Tripolis then attempt to show that the Note and Trust Deed in their own case were separated, and therefore the Tripolis are left with quiet title to the Subject Property.  This assertion rests entirely on the Tripolis'

---

[26] *Collard v. Nagle Const., Inc.*, 57 P.3d 603, 607 (Utah App. 2002) (citing *Church v. Meadow Springs Ranch Corp.*, 659 P.2d 1045, 1048-49 (Utah 1983)).

[27] Response at 11 ¶ 46.

[28] *Carpenter v. Longan*, 83 U.S. 271, 274 (1872).

misunderstanding of the law and their misinterpretation of the case cited.

*Carpenter v. Longan,* actually stands for the proposition that when a mortgagor and a mortgagee make a separate agreement, that agreement does not follow the note if the note is transferred.  In *Carpenter,* a borrower signed a note and a mortgage to obtain a loan.  The mortgagor and the mortgagee then made a separate agreement that the mortgagee would take possession of some property, sell it, and apply the proceeds to the debt secured by the mortgage. The mortgagee then sold the note to a third party without having fulfilled the mortgagee's obligation to apply the proceeds of sale to the debt.  At the note's maturation date, the new mortgagee foreclosed on the loan for non-payment. The mortgagor asserted that their account should be credited for the value of the property given to the original mortgagee pursuant to their agreement with the original mortgagee.

The question then became, whether an assignee "takes the mortgage as he takes the note, free from the objections to which it was liable in the hands of the [original] mortgagee."[29]  The *Carpenter* court answered in the affirmative.  Had the mortgagee retained possession of the note, the mortgagor could assert that the terms of the separate agreement altered the mortgagee's right to foreclose on the note.  However, the note was transferable and when the note was transferred, the separate agreement between the original mortgagee and the mortgagor was not binding on the assignee.

In its analysis of the issue, the court had to deal with the subordinate question of whether or not a note and mortgage could be separated or if a parties rights regarding the note could somehow become different than its rights regarding the security.  The *Carpenter* court observed

---

[29] *Id.* at 273.

that the note and the mortgage cannot be separated.[30]  The Tripolis torture this concept to have it

become a legal rule that renders a note void when separated from the trust deed.[31]  The

impermissible separation theory has been heavily litigated and uniformly rejected.[32]  Even the

*Carpenter* court recognized that "[t]he transfer of the note carries with it the security, without

any formal assignment or delivery, or even mention of the latter."[33]  Thus, even if BB&T or

MERS had attempted to separate the Note from the Trust Deed, the security was paired, as a

matter of fact, with the Note at all times, regardless of any purported attempt to separate the two.

**2. BB&T must Produce the Original Note (Produce the Note Theory)**

The Tripolis' second claim is that BB&T must produce the Note prior to asserting its

rights.  The Tripolis state, "Hopp & Associates, LLC fails to state that ONLY non-certified nor

attested to COPIES were sent to Movants in lieu of either the ORIGINAL, certified copies of, or

attested to copies of the Note, the Deed of Trust [DOT] and the original application was never

sent as requested."[34]  It is unclear whether this is meant to support the Tripolis' first assertion

(discussed above) or to assert that the Tripolis are not obligated to pay unless BB&T can produce

the original Note and Trust Deed.[35]  The second assertion has no basis.  "Utah law on nonjudicial

foreclosure contains no requirement that the beneficiary produce the actual note in order to

---

[30] *Id.*

[31] Response at 12 ¶ 51.

[32] *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, No. 11-4118, 2012 WL 1035384 (10th Cir. Mar. 29, 2012);  *Marty v. Mortgage Elec. Registration Sys.*, No. 1:10-CV-00033-CW, 2010 WL 4117196 (D. Utah Oct. 19, 2010);  *Owens v. Recontrust Co., NA*, No. CV 10-2696-PHX-JAT, 2011 WL 3684473 (D. Ariz. Aug. 23, 2011); *Maxa v. Countrywide Loans, Inc.*, No. CV10-8076-PCT-NVW, 2010 WL 2836958 (D. Ariz. July 19, 2010).

[33] *Carpenter,* 83 U.S. at 275.

[34] Response at 10 -11 ¶ 43.

[35] *Id.* at 11 ¶ 46 ("HOPP & ASSOCIATES, LLC states that 'The Note/Deed of Trust Represent a Valid Loan' however, HOPP & ASSOCIATES, LLC fail to state that the 'Note' which BB&T knows not where it is, and the DOT is recorded in the County Recorder's Office without the 'Note' is prima facie evidence that the Note and DOT have traveled separate paths.")

authorize the trustee to foreclose on the property secured by the note."[36]

### 3. The Tripolis' Obligations were Discharged

The Tripolis assert that they have been discharged from the debt because they sent "an instrument" to BB&T and BB&T failed to send the Tripolis a "Notice of Dishonor" or return the instrument within a twenty four hour period.[37] The Tripolis do not provide documentation of this instrument or state what was actually sent. The Tripolis assert that the "instrument" combined with a letter instructing the bank to discharge the debt is legally sufficient to absolve them of their obligation to repay the loan unless the bank returns or dishonors the "instrument" within twenty four hours.[38] The Tripolis rely on the Uniform Commercial Code (U.C.C.) §§ 3-603 and 4-302 as the legal authority for their claim.[39]

This argument rests on the Tripolis' misunderstanding of the sections cited. U.C.C. § 3-403 (Payor Bank's Responsibility for Late Return of Item) governs the relationship between Depository Banks and Payor Banks. U.C.C. § 3-603(b) (Tender of Payment) governs situations when a borrower tenders payment of the obligation and that payment is refused. Section 3-403 clearly does not apply as BB&T did not act as a Payor Bank with respect to the Tripolis. As to section 3-603(b), the Tripolis do not claim to have made actual payment, but rather that they mailed an "instrument" along with a claim that the bank must either return the instrument or discharge the debt. Even if the Tripolis did make an actual payment, section 3-603(b) clearly states: "If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of

---

[36] *McGinnis v. GMAC Mortg. Corp.*, No. 2:10-CV-00301-TC, 2010 WL 3418204, at *2 (D. Utah Aug. 27, 2010); *see also* Utah Code Ann. § 57–1–21 to –38.

[37] Response at 23-24 ¶¶ 106-108.

[38] *Id.* at 24 ¶¶ 109-110.

[39] *Id*.

the tender . . . ."[40]  The Tripolis' claim that the U.C.C. applies to discharge the entire balance

owed is not supported and rests entirely on their misunderstanding of applicable law.

**4. The Note is an Investment Contract**

The Tripolis assert that they are undisclosed parties to an investment contract and

therefore they are entitled to either the proceeds from that investment or quiet title in the Subject

Property.[41]  This claim rests on the Tripolis' conclusory argument that if something is "included

in the definition of a security, it's excluded from the definition of a note."[42]  Based on this

erroneous logic, the Tripolis contend that the Note contains a maturity date that exceeds nine

months and therefore, meets the definition of a security as defined in the Securities Exchange

Act of 1934.[43]  The Tripolis then assert that because the document meets the section 78c

definition of a security, it cannot be a note.  This claim is entirely meritless and unsupported by

applicable law.  The definition of a "security" used in Title 15 of the United States Code has no

effect on the Tripolis' legal obligations under the Note.

In conjunction with this claim, the Tripolis assert that BB&T cannot foreclose on the

property unless Note and Trust Deed are a "Qualified Mortgage" as defined by 26 U.S.C § 860G.

Title 26 is the Internal Revenue Code and Section 860G governs the taxation of Real Estate

Mortgage Investment Conduits (REMIC's).  This statute has no bearing on BB&T's right to

foreclose and nothing requires the Note and Trust Deed to be held by, or pass through, a REMIC

prior to foreclosure.

---

[40] U.C.C. § 3-603(b).

[41] Response at 19 ¶ 79.

[42] *Id* at. ¶ 78.

[43] 15 U.S.C. § 78c (Definitions and Application).

**Alleged Misconduct**

In addition to the quiet title claim, the Tripolis allege that BB&T, Hopp & Associates, and MERS violated various federal statutes, committed fraud, mishandled the loan documentation, and generally acted with "without clean hands."[44]

**1. BB&T Failed to Respond to the RESPA Request**

The Tripolis claim to have sent BB&T a Qualified Written Request (QWR) on multiple occasions and allege BB&T failed to properly respond to each request.  The Real Estate Settlement Procedures Act (RESPA) requires the servicer of a federally related mortgage loan to acknowledge receipt of a QWR within twenty days of its arrival.[45]  Within 60 days of receiving the QWR, the servicer must make applicable corrections or provide a written explanation why the servicer believes the account to be correct.[46]  In addition to being labeled as a "Qualified Written Request," RESPA letters must include information necessary to identify the borrower and a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide sufficient detail to the servicer regarding other information sought by the borrower."[47]

The letter sent by the Tripolis to BB&T alleges that the Tripolis believe BB&T to be engaged in "predatory servicing or lending" and states that they were concerned that "predatory servicing and/or predatory 'lender' practices may have affected us, personally."[48]  The Tripolis then go on for fifteen pages requesting answers to numerous questions.  At no time did the

---

[44] Response at 26 ¶ 2.

[45] 12 U.S.C. § 2605(e) (2006).

[46] *Id.*

[47] *Id.* § 2605(e)(1)(B).

[48] RESPA Qualified Written Request, TILA Request, Complaint, Dispute of Debt & Validation of Debt Letter (Exhibit D), attached as Exhibit D to Memorandum Opposing Remand, docket no. 14-4, filed March 12, 2012.

Tripolis assert that there was an error in their account.  Almost all of their questions go well

beyond what was necessary to ensure that their loan was error free.  The Tripolis acknowledge

that the loan was valid at inception[49] and that they received copies of the loan documentation

from Hopp & Associates, but they assert that this response was inadequate.[50]  Because the

Tripolis did not assert that the account was in error, the letter was not a QWR and the response

by Hopp & Associates was not deficient.  Therefore, the Tripolis have stated no allegation that

would entitle them to relief under 12 U.S.C. § 2605.

Even if the Tripolis' letter did qualify as a QWR and BB&T had failed to adequately

respond, the remedy for such a violation is actual damages plus $1,000.[51]  Failure to respond to a

QWR does not affect the legitimacy of the loan.[52]

## 2. Hopp & Associates Breached its Fiduciary Duty

The Tripolis also claim that Hopp & Associates breached its fiduciary duty to "act with

reasonable diligence and good faith on [the trustor's] behalf . . . ."[53] Hopp & Associates was

hired to represent BB&T and therefore owe no fiduciary duty to the Tripolis.

## 3. Hopp & Associates Used Unfair or Unconscionable Means to Collect a Debt

The Tripolis claim that Hopp & Associates violated federal law by acting as a third party

debt collector while simultaneously acting as legal counsel to BB&T.  The Fair Debt Collection

Practices Act (FDCPA) [54] does apply to attorneys and the Tripolis correctly cite *McCollough v.*

*Johnson, Rodenburg & Lauinger, LLC* as an instance where a law firm was held liable for

---

[49] Response at 12 ¶ 78.

[50] Response at 10 ¶ 43.

[51] 12 U.S.C. § 2605(f)(1).

[52] *See id.*

[53] Response at 12 ¶ 50.

[54] 15 U.S.C. § 1692a (2006).

violating the FDCPA.[55]  However, the Tripolis fail to cite any legal authority for the proposition

that an attorney or law firm may not simultaneously act as a debt collector for an entity and bring

foreclosure proceedings on behalf of that same entity.  The Tripolis make the conclusory

allegation that Hopp & Associates have used "unfair or unconscionable means to collect a debt,"

but cite no supporting facts other than to state that the letter sent by Hopp & Associates

identified the firm as a debt collector and that Hopp & Associates has brought foreclosure

proceedings against them.  Accordingly the Tripolis are not entitled to any relief under the

FDCPA.

**4. BB&T Wrongfully Attempted to Collect a Contested Debt**

The Tripolis also allege that BB&T has violated a provision of the FDCPA by attempting

to collect a contested debt.[56]  The FDCPA prohibits "abusive, deceptive, and unfair debt

collection practices."[57]  To prevail on this claim, the Tripolis must prove that a debt collector's

effort to collect a debt from a consumer violated some provision of the FDCPA.[58]  The Tripolis'

claim fails because they have not alleged facts that constitute a violation of the FDCPA.

The Tripolis assert that "BB&T appears to have violated the federal law under the

FDCPA by continuing with debt collection practices after the debt had been disputed."[59]  They

rely on a part of the state that states

> the debt collector shall cease collection of the debt, or any disputed portion
> thereof, until the debt collector obtains verification of the debt or a copy of a
> judgment, or the name and address of the original creditor, and a copy of such
> verification or judgment, or name and address of the original creditor, is mailed to

---

[55] 637 F.3d 939, 951 (9th Cir. 2011).

[56] Response at 25 ¶ 115 (referencing 15 U.S.C. §1692(b)).

[57] 15 U.S.C. § 1692a.

[58] *See Maynard v. Cannon*, 401 F. App'x 389, 393 (10th Cir. 2010) (citing *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3rd Cir. 2005)).

[59] Response at 25 ¶ 115.

the consumer by the debt collector.[60]

This provision does not specify the extent of the information that must be provided, but it was not intended to require a creditor to "give a debtor a detailed accounting of debt to be collected."[61]  Rather, the provision was intended to "eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid."[62]

BB&T was required to provide the basis for the foreclosure before proceeding.  The Tripolis acknowledge that they received a letter from Hopp & Associates containing copies of the Note, Trust Deed, and Notice of Assignment, but contend that this verification was inadequate because it failed to include "the ORIGINAL, certified copies of, or attested to copies of the Note, Deed of Trust [DOT] and the original application was never sent as requested."[63] The Tripolis were provided notice that foreclosure proceedings had commenced, and had ample time to alleviate their concerns.  Nothing in section 1692g suggests that the debtor must agree with the creditor or be convinced of the legitimacy of the debt before proceedings can begin.

**5. Claims Against MERS and MERS Employees**

The Tripolis make various allegations against MERS and MERS employees.[64]  The Tripolis allege that when their loan documents are compared with documents "found throughout the internet" the following "discrepancies" are found: repeating patterns of signatures, changing titles of employees, writing styles appear to change daily, identical signatures on different documents, and complete sections of forms are copied and presented as the original.[65]  Based on

---

[60] 15 U.S.C. § 1692g (b).

[61] *Maynard,* 401 F. App'x at 396.

[62] *Id*. (internal punctuation and citation omitted.).

[63] Response at 10 ¶ 43.

[64] Response at 13-16 ¶¶ 53-64.

[65] Response at 15 ¶ 55.

these "discrepancies" the Tripolis conclude that they have been "subjected to these MERS assignments which have no merit, are fraudulent, are a part of a robo-signing scheme, and quite possibly the 2-step notary process . . . ."[66]  Even if there had been some kind of mishandling of loan documents by the beneficiary, this does not abolish the borrower's duty to repay the loan.

### Conclusion

The Tripolis' complaint fails the basic Rule 12(b)(6) requirements.  There are no facts alleged in the complaint that would give the Tripolis quiet title to Subject property and the complaint states no recognized legal theory that would entitle the Tripolis to the relief they request.  Additionally, the misconduct alleged is based on incorrect conclusions of law and generalized allegations of wrongdoing.

### ORDER

IT IS HEREBY ORDERED that GNMA's Motion to Dismiss[67] and BB&T's and Hopp & Associates' Motion to Dismiss[68] are GRANTED.  This case is DISMISSED with prejudice.

IT IS FURTHER ORDERED that the Tripolis' recently filed Motion to Dismiss[69] is MOOT.

Dated July 5, 2012.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[66] Response at 16 ¶ 61.

[67] Motion to Dismiss, docket no. 15, filed March 16, 2012.

[68] Defendants Branch Banking & Trust Corp.; Robert J. Hopp & Assoc., LLC Motion to Dismiss, docket no. 8, filed February 28, 2012;

[69] Motion to Dismiss, docket no. 43, filed July 5, 2012.